By the Court—Woodruff, J.
The answer in this case begins with a denial that the plaintiffs are the lawful owners and holders of the promissory note in question, and denies that the payees of the note indorsed the same as alleged in the complaint, or that the defendant is indebted to the plaintiffs thereon in any sum whatever. If these denials stood in the answer unqualified they might perhaps create an issue which would involve every question of legality in the plaintiffs’ title which the defendant could raise by proof. The words of the answer which immediately follow, however, show that it was not the design of the pleader nor is it the true meaning of the answer to take any such broad defense; they define and limit the generality, of the previous denials, for the sentence continues, “but he says that the International Insurance Company mentioned therein is the owner of the said note and alone entitled to sue for the recovery of the same, inasmuch as he says the said note was indorsed and delivered to the plaintiffs as a collateral security for a loan of a sum exceeding $2,000, made by the plaintiffs to said Company.” The answer then states that the amount of notes indorsed and transferred at the same time to the plaintiffs exceeded $7,000, and the indorsement and delivery of all of them was made without any previous resolution of the Board of Directors authorizing the same and was null and void; of all which the plaintiffs had notice. The plain meaning and only true meaning of which is, not that the note in question has not been indorsed and delivered to the plaintiffs if that can be done without a previous resolution of the Board of Directors of the corporation, but that the plaintiffs made a loan to the Interriational Insurance Company, the payees and owners of the note, of a sum exceeding $2,000, and to secure *221 the payment thereof the Company indorsed and delivered to the plaintiffs this and other notes to an amount exceeding $7,000; but inasmuch as that.Company was a moneyed corporation and no previous resolution of the Directors had been passed authorizing the transfer, the plaintiffs acquired no title; and this is I think the whole of the defense. The defendant thus places himself on the single point of objection to the transfer, that there was no previous resolution of the Directors authorizing the indorsement and transfer, but admits that the indorsement and transfer were made.
Upon this state of the pleadings I incline to the opinion that unless it is true, as a matter of law, that a moneyed corporation cannot make a valid indorsement and transfer of notes exceeding in amount $1,000 in any manner, unless a previous resolution of the Board of Directors be obtained, then the plaintiffs were entitled to judgment on mere production of the note at the trial, unless the defendant proved that the plaintiffs knew when they received the note that no such authority existed, which was not attempted. It will hereafter be seen that such a transfer may be made, and that a bona fide holder for value without notice will take a valid title thereby.
The plaintiffs might upon the answer have taken the fact of indorsement and transfer to them as admitted, and confined the inquiry on the trial to the simple question whether there was such a resolution of the Board or whether they took the note in .good faith without knowledge of the want of such a resolution.
But on the trial and on the argument of the appeal the ease was conducted as if two questions were open: First, whether, -independent of any legal question growing out of the want of a resolution of the Board, the note was in truth duly indorsed and delivered to the plaintiffs ? and although I think the answer of the defendant virtually concedes this, it has been the subject of discussion, and in my opinion that discussion and the proofs clearly show that if the question be an open one upon the pleadings, it must be answered in the plaintiffs’ favor. And second, in the .absence of any resolution of the Board, did the plaintiffs acquire a good title to the note by virtue of the indorsement and delivery to them, notwithstanding the statute relied upon by the *222 defendant which prohibits a conveyance, assignment or transfer of any of the effects of a moneyed corporation exceeding in value $1,000 without such previous resolution ?
1. The note in suit is a valid note; to that the defendant has no defense; it was proved to have been given to the International Insurance Company for premiums in advance ; the Company had power, by its charter, to receive such notes, and when received they became the property of the Company, assignable and transferable as its own property for any lawful purpose within the proper scope of its business. The eleventh section of its charter authorized it to negotiate such notes in the course of its business, and the fourth section plainly contemplated that it would do so. (Laws of 1844, ch. 156, p. 229; id., 1855, ch. 295, p. 505.) The note was indorsed and delivered to the plaintiffs prior to the 27th of June, 1856, as collateral security for a loan made to the Company, and the money was received by the Company and applied to its ordinary business, the payment of losses, expenses, &c.
There was no want of power in the Company to raise money for.such purposes, and therefore there was no illegality in this respect in the transfer. (Bank of Genesee v. Patchin Bank, 13 N. Y. R., [3 Kern.,] 309; 19 id., 312; Marvine v. Hymers, 12 id., [2 Kern.,] 223; Central Bank Brooklyn v. Lang, 1 Bosw., 202; Holbrook v. Basset, decided in this Court July 9th instant.)[1]
On the 27th June, 1856, the amount of the loan by the plaintiffs was reduced to $2,800, and to that amount the loan was continued, and the same notes remained in the plaintiff’s hands as security, and the loan has not been repaid. It would be difficult to suggest any ground upon which the Company could in equity defeat the plaintiffs’ title even if the formal indorsement was defective (unless the statute to be presently noticed invalidates the transfer.)
But the note when transferred to the plaintiffs was indorsed to them by formal indorsement for the Company, signed by Moses Starbuck, their President.
This indorsement was abundantly shown to have been made in conformity with the usual course of business of the Company, *223 according to its uniform habit and usage. That it was the way in which all their business was done.
This was prima facie sufficient authority for the transfer, and the plaintiffs had a right to rely upon it, and the Company having received the money and used it in their business, it was presumptively so far sanctioned and affirmed that unless it was invalid by the statute the plaintiff, as between him and the Company, is entitled to collect it. Nor does it appear that the Company have ever denied the validity of the transfer or sought to disaffirm it.
So far as the plaintiffs’ title depends upon the authority of the President to indorse (irrespective of the statute) it is sufficient, and in that respect is plainly distinguishable from the Marine Bank v. Clements in this Court where, no authority was proved.[1] The uniform usage of the Company was authority enough, as to bona fide takers of their negotiable paper for value in the usual course of business.
2. But the defendant insists that inasmuch as the amount of notes transferred as security exceeded $1,000, the transfer is illegal and void because it was not authorized by a resolution of the Board of Directors, and is therefore subject to the prohibition of the eighth section of the act to prevent the insolvency of moneyed corporations. (Sec. 8 of art. 1, title 2, ch. 18, part I of the Revised Statutes.)
There was no evidence whatever that the plaintiff’s had any notice that no such resolution had been passed. Not only so, it was admitted on the trial as a part of the Case that the plaintiffs advanced the money in good faith when they took the note, and had no such notice. It has been repeatedly held in this Court that one who receives a transfer from such a corporation in the usual course of business in good faith, and advances his money in reliance upon an indorsement made in due and proper form, in the manner the corporation is in the habit of indorsing and transferring its notes for the purposes of its business, without any notice that there has been no such resolution, is a bona fide holder for value, and is within the saving annexed to the section referred to, and is not to be affected by the want of such a resolution. *224 (Brouwer v. Harbeck, 1 Duer, 114; 5 Seld., 589; Howland v. Meyer, 2 Sand., 180; 3 Comst., 290, and cases next below cited.)
The note was therefore transferred by due authority as between the Company and the plaintiffs, when so indorsed by its proper officer, the President, and there is nothing in the statute referred to which invalidates the transfer, the plaintiffs having received the note for value, in good faith, without notice. (Central Bank of Brooklyn v. Lang, 1 Bosw., 202; The Marine Bank v. Clements in this Court, November, 1858; Ogden v. Andre and Ogden v. Raymond, April, 1859;[1] Hoyt v. Thompson, 1 Seld., 333.)
It is therefore unnecessary to consider the effect of the resolution of May 3d, 1852, or of the first section of the by-laws of December 3d, 1845, which it is claimed are sufficient to warrant the transfer upon broader grounds. (See a similar-by-law construed in Howland v. Meyer, ubi supra.)
3. The question, what was the rate of interest on the loan made to the Company on the notes, was properly excluded. It was not alleged in the answer that the transfer was usurious, and therefore evidence to invalidate it .on that ground was not admissible. (McKyring v. Bull, 16 N. Y. R., 297.)
In no other aspect was it material what was the rate of interest. If the transfer was not invalid because of usury it would not have made the plaintiffs any less bona fide holders for value had it been shown that more than seven per cent per anmun was-reserved upon the loan. The transaction was not either by the answer, on the trial, or on the argument of the appeal, claimed to be invalid by reason of usury. If such a claim had been made, it is at least doubtful whether the statute which prohibits a corporation from interposing usury as a defense, has not operated to render transactions with corporations valid which but for the statute would be usurious and void, and not only valid as against the corporations but so that third persons cannot allege usury of such a transaction and claim that it confers no title upon the lender. Be this as if may, we do not perceive that the question of good faith could in the present case have been affected by any proof on the subject. If corporations cannot interpose the defense of usury and there is no fraud practised, there is no proof *225 of bad faith in merely showing that the lender reserved and the corporation agreed to pay more than seven per cent interest. Besides, in the case now before us, it being clearly proved that the note was valid in the hands of the Company, it is quite plain, we think, that the defendant could not set up usury between the corporation and the plaintiffs. Whatever may be the rule where the defendant has a defense good against the note in the hands of the Company, if in truth he has no such defense he cannot refuse to pay and defeat the plaintiffs’ action by proof which the Company could not be permitted to give in assertion of a title to reclaim the note. The plaintiffs’ title being good as against the Company, and the defendant having no defense to the note, the plaintiffs’ title is good as to him. (Laws of 1850, chap. 172, § 1, p. 334; 3 R. S., 5th ed., p. 75.)
4. The resolution of June 27,1856, suspending Starbuck from exercising the “ functions ” of President, was properly excluded for several reasons. The note had been transferred to the plaintiffs previous to that time as security for the loan, and the subsequent suspension of Starbuck could not affect their title. The continuance of the loan by way of renewal of a portion thereof did continue to plaintiffs the title originally acquired. That was good until the whole loan was paid off. Besides, the renewal was negotiated and agreed to by Ogden, the Vice-President, who by the very resolution was authorized to discharge the duties of President. And, finally, the plaintiffs had no notice of the resolution and could not therefore be affected by it.
No evidence having been improperly received or rejected; it having been conceded on the trial that there is no question of fact which should have been submitted to the jury; and we being of opinion that upon the facts proved the plaintiffs were entitled to recover, the verdict should be set aside and judgment entered for the plaintiffs for the amount of the note and interest, with costs, in accordance with the stipulation made at the trial.
Ordered accordingly.

 Ante, p. 147,

 3 Bosw., 600.

 Since reported, 3 Bosw., 600, 4 id., 585, and ante, p. 16.